## F. M. DAVIES COMPANY v. LARS HERSETH.[1]

May 1, 1925.

No. 24,604.

**Finding sustained that note was executed in consideration of loan of money.**
The evidence sustains the finding that the promissory note in suit was given by defendant to plaintiff in consideration of a loan of money, and such finding warrants the conclusion of law, so that it is immaterial whether there is support for the further finding that the dealings between the parties previous to the giving of the note were not gambling transactions.

See Appeal and Error, 4 C. J. p. 649, § 2541; Bills and Notes, 8 C. J. p. 1049, § 1359; Gaming, 27 C. J. p. 1103, § 358.

Action in the district court for Hennepin county upon a promissory note. The case was tried before Kolliner, J., who ordered judgment in favor of plaintiff. Defendant appealed from an order denying his motion for a new trial. Affirmed.

*W. H. Stutsman*, for appellant.

*Lancaster, Simpson, Junell & Dorsey*, for respondent.

[1]Reported in 203 N. W. 521.

HOLT, J.

Defendant appeals from the order denying a new trial. The action is to recover on a promissory note for $3,000 executed by defendant to plaintiff for money loaned and to foreclose the collateral securing its payment. The defense was no consideration, and that the note was given to pay the loss on certain gambling transactions in the purchase and sale of future grain options with no intent of either party to take or make delivery.

The court found that the note was given on July 16, 1920, in consideration for a loan made by plaintiff to defendant of $3,000. Also that the note was not given in a gambling transaction and that the dealings between the parties prior to July 1, 1920, and prior to the giving of said note were not gambling transactions. The first finding controls. If the note was given for money then loaned, it could not have been given in a gambling transaction, and it is wholly immaterial whether the prior dealings between the parties had been legitimate business or gambling in futures.

Defendant is a farmer and rancher in Houghton, South Dakota, owning and using about 2,000 acres. He is also a stockholder in a grain elevator corporation at that place. Plaintiff is a corporation engaged in buying and selling grain on commission on the Chamber of Commerce in Minneapolis, Minnesota. For years it had dealt with the elevator company at Houghton, selling grain consigned to it, and perhaps also executed "hedges" for the elevator company, such transactions concededly being legitimate. For some time prior to June 1, 1920, it had also bought and sold grain for future delivery upon defendant's orders. F. M. Davies represented plaintiff in all dealings with the elevator company and with defendant.

Mr. Davies' version is this: That on June 1, 1920, plaintiff had an account both against the elevator company and defendant (defendant being then treasurer of the elevator company and Edward Tunby its manager) on account of his deals in futures, which he promised to pay before the end of the month; that he did remit on June 29, one check of his own for $1,500; one of the same amount of the elevator company to apply on its account, $1,500 in Liberty bonds, and his note for $1,500; that Davies applied the checks in

payment of defendant's account and so advised defendant, to which application no objection was made by either defendant or the elevator company; that previous to such payment Davies had agreed to loan or procure a loan of $3,000 for defendant on his note in that amount, provided he would deposit $3,000 in Liberty bonds as collateral; that when Davies received this remittance he forwarded the note in suit to defendant for signature, who signed it, and on July 9, through Mr. Tunby, forwarded it to plaintiff with a notification that a draft would be made on plaintiff for the $3,000 a week from that date, which draft should be charged to defendant; that Davies advised Tunby that the draft would not be honored because defendant had not furnished more than $1,500 of Liberty bonds as collateral; that Davies then had a telephone communication with defendant who promised to send the rest of the Liberty bonds, and on the strength of that promise the draft was honored and paid by plaintiff on July 16, 1920.

Defendant's story is altogether different. He testified that instead of borrowing from plaintiff on this note, he merely lent the note and bonds to plaintiff for its accommodation to tide it over a short period of stringency in its business. He does not claim that the $3,000 note was given to pay gambling losses. Nor does the written evidence warrant the inference that the note was to be applied upon any past transactions between plaintiff and defendant. It was either given as an accommodation pure and simple to plaintiff, or else it was for money loaned to defendant. The court found that it represented a loan. We think the record amply sustains this finding. That being so, it follows as a matter of course that the note in suit was not given in a gambling transaction.

Having reached this conclusion, there is no occasion to examine the record to determine whether or not the evidence supports the finding that the dealings between plaintiff and defendant prior to July 1, 1920, the date of the note, were not gambling transactions. No counterclaim or offset is pleaded, hence defendant could have no relief herein, even if prior dealings were in fact gambling in futures.

The order is affirmed.